UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------
HOMI, LLC,

              Plaintiff,

       -v-

SERHANT REAL ESTATE, INC.,

              Defendant.
-------------------------------------
```

26-cv-552 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.:

Plaintiff Homi, LLC ("Homi") alleges in this action one count of copyright infringement against defendant Serhant Real Estate, Inc. ("Serhant") in connection with its operation of an AI-powered software platform called S.MPLE. Homi alleges that S.MPLE infringes its copyright in a platform called Aire AI or the "Engine," which was previously developed by its CEO, Josh Team. Serhant has moved to stay the action pending the resolution of an ongoing arbitration between it and Team related to, among other things, the ownership of the intellectual property underlying S.MPLE, and to compel Homi into that arbitration. Serhant has also moved, in the alternative, to dismiss the action. For the reasons set forth below, the Court stays the action.

I.   **Background**

In or around January 2023, Josh Team, a former real estate executive and the founder and current Chief Executive Officer of plaintiff Homi, began developing and authoring an AI-powered real estate software tool called Aire AI (the "Engine" for short). See

1

First Amended Compl. ("FAC") ¶¶ 10, 11. At some point that spring, Team "demonstrated the Engine" to representatives of defendant Serhant, a real estate company. Id. ¶ 29.

Thereafter, on May 26, 2023, Team entered into a contractor relationship with Serhant as part of which the parties entered into a Non-Disclosure Agreement (NDA). Id. ¶ 31; see also Barsi Decl., Ex. B ("NDA"), ECF No. 19-2. Among other things, the NDA provided for the arbitration of disputes between Team and Serhant and also governed the assignment of ownership in inventions and original works. See NDA §§ III, IV. With respect to intellectual property, the NDA provided that

> [Team] hereby assigns to [Serhant] . . . the entire right, interest and title to all Developments (as defined herein) made, conceived or first reduced to practice solely or jointly by [Team] . . . which: (i) were made, conceived or first reduced to practice in the course of [Team's] involvement with [Serhant] or with the use of [Serhant's] time, materials, funds or facilities . . . .

Id. § III(a). The NDA further defined "Developments" to mean

> (i) any ideas, formulae, works, modifications, processes, discoveries, designs, trade secrets, technical specifications and data, creations, improvements, works of authorship, ideas and other developments, . . . regardless of their form or state of development, of any kind that are or were since the date of commencement of [Team's] engagement with [Serhant] conceived, created, developed or reduced to practice by [Team], alone or with others, that are either: (A) conceived during regular working hours and at [Team's] place of work . . . or (B) . . . result from tasks assigned to [Team] by [Serhant], or are conceived or made with the use of [Serhant's] resources, facilities or materials; and (ii) any and all . . . copyrights . . . with respect to the foregoing."

2

Id. § III(d). The NDA also provided that "[Team] has attached . . . as Exhibit A[] a list of all Developments existing prior to [his] engagement with [Serhant], which are not assigned by [the NDA], in which [Team] has any right, title or interest." Id. § III(b). No Exhibit A was attached to the agreement.

On November 1, 2023, Team transitioned to full-time employment at Serhant as the company's first-ever president. See FAC ¶ 34; see also Barsi Decl., Ex. C ("Emp. Agm't"), ECF No. 19-3. Like the NDA, the Employment Agreement into which Team entered included an arbitration provision, as well as a provision governing the ownership of intellectual property. See Emp. Agm't ¶¶ 13, 14.2. In the provision governing intellectual property, Team agreed that

> all right, title, and interest in and to all . . . technology, inventions, discoveries, processes, techniques, methods, ideas, concepts . . . and all other work product of any nature whatsoever, that are created, prepared, produced, authored, edited, amended, conceived, or reduced to practice by [Team] individually or jointly with others during the term of employment and relate in any way to the business or contemplated business of [Serhant] or result from any work performed by [Team] for [Serhant] . . . as well as any and all rights in and to U.S. and foreign . . . copyrights and copyrightable works (including computer programs) . . . shall be the sole and exclusive property of [Serhant].

Emp. Agm't ¶ 14.1.

While Team was affiliated with Serhant, he built an application for Serhant called "S.MPLE." He did so by "using and copying" the Engine code. FAC ¶ 37. According to the complaint, Serhant and Team had a "mutual understanding that [S.MPLE] . . . would be built on, and by copying, Engine [c]ode." Id. ¶ 36.

3

On July 6, 2025, Team was terminated "for cause." See Barsi Decl. ¶ 5, ECF No. 19. A week and a half later, Team sent Serhant a letter demanding that Serhant discontinue its use of the S.MPLE application, which, Team asserted, "deploys intellectual property that is owned by Team . . . and which Serhant has not paid to use." See Lerner Decl., Ex. 1 ("July 17, 2025 Letter"), at 5, ECF No. 18-1. In the letter, Team also disputed the basis for his termination. Id. at 1-5.

Serhant denied both claims by letter and, on July 25, 2025, initiated an arbitration in the American Arbitration Association (AAA) against Team based on the arbitration provisions contained in the Employment Agreement and the NDA. See Lerner Decl., Ex. 2 ("July 21, 2025, Letter"), ECF No. 18-2; Lerner Decl., Ex. 3 ("Arb. Demand"), ECF No. 18-3. Serhant's Arbitration Demand sought a declaration that all right, title, and interest in S.MPLE belong to Serhant and that Serhant had grounds to terminate Team for cause. See Arb. Demand ¶ 37. In support of its claimed ownership of S.MPLE, Serhant pointed to the provisions of the NDA and Employment Agreement assigning ownership of any intellectual property developed during the course of Team's involvement with Serhant to Serhant. Id. ¶¶ 21-25. A preliminary conference was held in September 2025 and the parties in the arbitration are currently engaged in discovery. The arbitration remains pending.[1] See Lerner Decl. ¶¶ 5-8, 13, ECF No. 18.

---

[1] On February 18, 2026, after this action was filed, Serhant moved in the arbitration proceeding to amend its demand to add claims against Homi, which it asserted is Team's alter ego. See Lerner Decl., Ex. 13 at 1, ECF No. 18-13. After receiving submissions from both parties,

Meanwhile, in June 2025, shortly before Team's termination, Team founded Homi, a Texas company that is the plaintiff in this action. FAC ¶ 41. Team serves as Homi's CEO. Id. ¶ 10. On October 27, 2025 -- after the arbitration between Serhant and Team had commenced -- Team executed a copyright assignment with Homi, assigning to Homi all of his rights in the "Engine." Id. ¶ 25. The next day, Homi federally registered its copyright in the "Engine" under the title Aire AI. Id. ¶ 27.

On January 21, 2026, Homi brought the instant action against Serhant. Homi alleges one count of copyright infringement based on Serhant's operation of the S.MPLE application. See FAC ¶¶ 63-73. Homi alleges that S.MPLE "is built on, incorporates, or otherwise uses Homi's Engine Copyright without Homi's authorization." Id. ¶ 42. The complaint alleges copying both of "literal" elements, such as the Engine's source code, as well as "non-literal elements," including various of the Engine's features, such as its "AI Chief of Staff," comparative market analysis, "SMS-to-task pipeline," and others. Id. ¶¶ 46-53.

---

on March 2, 2026, the arbitrator denied the motion without prejudice. The arbitrator explained that its authority to make an arbitrability determination does not extend to Homi, a party that is not before it and has not consented to its jurisdiction. The arbitrator therefore concluded that this Court must determine, in the first instance, whether Homi is subject to the arbitration agreement as Team's alter ego. Id. at 2.

Homi seeks a declaratory judgment that it is the owner of the Engine copyright, damages for Serhant's alleged violations of the Copyright Act, a permanent injunction, and fees. Id. at 12-14.

On March 3, 2026, Serhant moved to stay the action pending the resolution of the ongoing arbitration between Team and Serhant, to compel arbitration, or, in the alternative, to dismiss the action for failure to state a claim. See Def.'s MOL in Support of Mtn. to Stay the Action ("Def.'s MOL"), ECF No. 17. Homi opposed. See ECF No. 21. On April 7, 2026, the Court held argument on the motion.

Thereafter, the Court gave Homi an opportunity to file an amended complaint and gave both parties the opportunity to supplement their arguments on the pending motions. On April 14, 2026, Homi filed its first amended complaint. See ECF No. 24. Both parties filed supplemental briefs. See ECF Nos. 27, 30.

After considering the amended complaint and the arguments advanced in the parties' briefs and at the oral argument held on April 7, 2026, the Court hereby grants Serhant's motion to stay. It declines, however, to compel arbitration. Because the Court grants the motion to stay, it need not reach the arguments advanced in support of the motion to dismiss.

## II.   Discussion

### A. Motion to Stay

Serhant first argues that the Court should stay this action pending the resolution of the ongoing arbitration between Team and Serhant.

A district court has discretionary authority to stay an action as part of its inherent power to control its docket. See Nederlandse Erts-Tankersmaatschappij, N.V. v. Isbrandtsen Co., 339 F.2d 440, 441-42 (2d Cir. 1964). A court may exercise this power to grant a stay when an arbitration is pending "in which issues involved in the case may be determined." Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991) (quoting Nederlandse, 339 F.2d at 441). The moving party bears a "heavy burden" of showing the necessity for the stay. Id. The court also must tailor its stay so as not to unduly prejudice the non-moving party. Id.

Serhant argues that the Court should stay this action because the pending arbitration "will determine Homi's rights, since [Homi] was only able to acquire such rights as Team was capable of conveying." Def.'s MOL at 10. The facts alleged in the amended complaint bear out this contention. A copyright claim requires showing both "owner[ship] of a valid copyright" and "unauthorized copying." Tifenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 131 (2d Cir. 2003) (quoting Castel Rock Entm't v. Carol Publ'g Grp., Inc., 150 F.3d 132, 137-38 (2d Cir. 1998))). Here, the copyright Homi seeks to enforce is derivative of Team's copyright, since Homi asserts no ownership interest other than those it received by assignment from Team on October 27, 2025. See FAC ¶ 25. The success of Homi's claims in this action therefore depends on the nature and scope of Team's ownership interest in the Engine as of October 2025.

The Court cannot resolve this issue without looking to the intellectual property provisions of the NDA and the Employment Agreement.[2] Serhant argues that those agreements "establish that Serhant, not Homi, owns the relevant intellectual property rights." Def.'s MOL at 3. Serhant points first to the NDA's assignment provision, arguing that the "version of the S.MPLE application incorporating the Engine [c]ode," which Homi itself alleges was built by Team during the course of his engagement with Serhant, is a "[d]evelopment" "made, conceived or first reduced to practice in the course of [Team's] involvement with [Serhant]," and therefore, under the contract, "belong[s] solely to [Serhant]." NDA § III; Def.'s MOL at 4. Serhant further argues that Team's failure to include an Exhibit A to the NDA listing the Engine as a "[d]evelopment[] existing prior to [Team's] engagement with [Serhant], which [is] not assigned by this Section" either proves assignment by operation of the NDA or discredits Homi's allegation that the Engine was demonstrable and reduced to practice prior to Team's entry into that agreement. NDA § III; Def.'s MOL at 4. Finally, to the extent that Team continued to work on S.MPLE after entering into the Employment Agreement by "using and copying the Engine [c]ode," Serhant argues that the terms of the Employment Agreement likewise make "[a]ny modifications, refinements,

---

[2] The NDA and Employment Agreement are properly considered at this stage in the proceeding because the amended complaint directly references and relies on them. Chambers v. Times Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); FAC ¶¶ 31-34, 39.

or derivative works that Team created" the exclusive property of Serhant. Def.'s MOL at 5; see also Emp. Agm't ¶ 14.1(making all work product "created, prepared, produced, authored, edited, amended, conceived, or reduced to practice . . . during the term of employment and [that] relate in any way to [Serhant's] business . . . the sole and exclusive property of [Serhant]").

Homi, for its part, contends that "Team did not transfer any of his existing intellectual property rights . . . in the Engine or the Engine Code to Serhant." FAC ¶ 38. However, in the amended complaint, Homi acknowledges that Team provided the Engine code to Serhant in the course of his employment and with the knowledge and understanding that S.MPLE "would be built on, and by copying, Engine [c]ode." FAC ¶ 38, 36; see also id. ¶ 37 (alleging that "Team built the S.MPLE application [while a contractor for Serhant] using and copying the Engine [c]ode"). Homi's assertion that no intellectual property rights were thereby transferred to Serhant is a legal conclusion that this Court need not credit. Accordingly, given Homi's acknowledgment that Team provided the Engine code to Serhant in the course of his engagement with the company and that he built S.MPLE using the Engine code, again, in the course of his engagement with Serhant, the extent of Team's surviving intellectual property rights in the Engine as of October 2025 will depend on an assessment of the relevant contractual provisions and the effect, if any, of his work on S.MPLE.

These are exactly the issues that are the subject of the pending arbitration between Team and Serhant. In the arbitration, Serhant

9

contends, among other things, that all right, title, and interest in S.MPLE belong to Serhant because S.MPLE was developed during the course of Team's engagement with Serhant and therefore any work product, ideas, or other forms of authorship that Team may have contributed (such as, for example, the Engine code) became the property of Serhant under the terms of the NDA and the Employment Agreement. See Arb. Demand ¶¶ 21-31. Thus, even taking as true Homi's allegations that "the Engine and the Engine [c]ode were developed, demonstrable, and reduced to practice prior to . . . Team's entry into the NDA," the Court cannot determine whether or to what extent Team's intellectual property interest in the Engine survived his employment at Serhant without assessing the very contractual provisions that are the subject of the pending arbitration. FAC ¶ 30.

Homi's standing to prosecute this action depends on the resolution of this dispute between Team and Serhant. Homi has only those rights that Team was able to assign it as of October 2025. Because those rights are the subject of and will be determined, in whole or in part, by the ongoing arbitration, a stay is necessary, not only to avoid duplicative litigation, but also, given the particular facts of this case, to avoid undermining the arbitration by which Team and Serhant agreed to resolve their disputes.

Finally, staying this action will not unduly prejudice Homi. First, to the extent the NDA and Employment Agreement bear on the copyright interests asserted in this action, Homi is not prejudiced by having those issues determined by an arbitrator rather than by this

Court. Homi's claimed copyright is derivative of Team's and Team unquestionably agreed to arbitrate "any controversy or claim . . . relating to [his] engagement with [Serhant]" or arising out of or dealing with the interpretation of either the NDA or the Employment Agreement. NDA § IV; see also Emp. Agm't ¶ 13.

Second, there is no indication that the pending arbitration will subject Homi to unreasonable delay. Serhant has not taken "any steps to hamper the progress of the arbitration proceeding." Nederlandse, 339 F.2d at 442. Serhant promptly initiated the arbitration a week after Team asserted ownership of the intellectual property underlying S.MPLE. Since then, the arbitration has proceeded to discovery and the parties have exchanged discovery demands. See Lerner Decl. ¶¶ 7-8. The continued progress in the arbitration gives the Court no reason to doubt that the arbitration will "conclude within a reasonable time." Nederlandse, 339 F.2d at 442.

Additionally, to the extent that some delay in this action is inherent in allowing the arbitration to run its course, Homi points to no "undue hardship" that would result. Id. Homi argues that it is harmed by every passing day in which Serhant infringes its copyright. These harms, however, can be remedied through damages if Homi ultimately prevails in this action. But because Homi's copyright claim cannot be resolved without first resolving the nature and scope of Team's copyright, the delay attendant to resolving that question is not, in this instance, undue.

The Court therefore grants the motion to stay.

11

**B. Motion to Compel Arbitration**

Serhant next argues that, not only should this action be stayed, but Homi should also be compelled to arbitrate based on the arbitration agreement between Team and Serhant.

A non-signatory can be bound to an arbitration agreement based on "ordinary principles of contract and agency." Thomson-CSF, S.A. v. Am. Arb. Ass'n, 64 F.3d 773, 776 (2d Cir. 1995) (citation omitted). The party seeking to compel a non-signatory to arbitrate bears the burden of proving that the circumstances of its case fall within one of those theories. Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL-CIO v. Custom Air Sys., Inc., 357 F.3d 266, 268 (2d Cir. 2004). Serhant invokes three such theories: veil-piercing/alter ego, agency, and estoppel. None is persuasive.

### 1. Alter Ego/Veil-Piercing

A non-signatory to an arbitration agreement may be bound to arbitrate as the alter ego of a signatory. Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 133 (2d Cir. 1997). To show that corporate veil-piercing is warranted, the party seeking to compel arbitration must demonstrate "(i) that the [signatory] exercised complete domination over the [non-signatory] with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured [the party seeking to compel arbitration]." Id. at 134.

Serhant's arguments do not satisfy this standard. Serhant argues that it "believe[s] that Team transferred his rights to Homi to avoid

12

the arbitration provision and . . . seek to embarrass Serhant." Def.'s MOL at 16. This assertion does not demonstrate that Team exercised or exercises "complete domination" over Homi and does not even attempt to engage with any of the factors courts typically consider in assessing whether such control exists. See Freeman v. Complex Computing Co., 119 F.3d 1044, 1053 (2d Cir. 1997) (discussing non-exhaustive list of ten factors relevant to determining "complete control").

As to the second prong, Serhant's argument fares little better. Implicitly, Serhant may mean to argue that Team's transfer of his rights in the "Engine" to Homi was a wrongful attempt to avoid the arbitration agreement to which he had agreed. Certainly, the fact that Team transferred his copyright in the "Engine" to Homi on October 27, 2026, after Serhant had already initiated the arbitration against him, raises some questions about what he intended to accomplish by the transfer. Serhant, however, no more than gestures at this argument and, in fact, nowhere argues that Team used his domination to "commit a fraud or a wrong." On its face, then, the arguments raised in Serhant's motion do not warrant treating Homi as Team's alter ego.

### 2. Agency

A non-signatory may also be compelled to arbitrate based on agency principles. Thomson-CSF, 64 F.3d at 777. Serhant argues that Homi is Team's agent and should be compelled to arbitrate on that basis. Its arguments are not persuasive.

Conclusory allegations of an agency relationship are insufficient to bind a non-signatory to an arbitration agreement. See AICO Inter.,

13

E.C. v. Merrill Lynch & Co., Inc., 98 Fed. App'x 44, 46-47 (2d Cir. 2004). The party seeking to compel arbitration must make a "full showing" that a recognized agency theory applies. Thomson-CSF, 64 F.3d at 70. Serhant, however, makes no more than a conclusory argument that Homi "acts subject to Team's direction and control" and with its "express, implied and apparent authority." Def.'s MOL at 16. The only allegation it points to in support of this contention is the fact that Team "formed Homi and is a co-owner of Homi, together with his spouse or former spouse." Id. But "an agency theory premised solely on affiliation between parent and subsidiary" is insufficient as a matter of law. W.P. Carey, Inc. v. Bigler, No. 18 Civ. 585, 2019 WL 1382898, at *6 (S.D.N.Y. Mar. 27, 2019). In its reply, Serhant suggests that the "affiliation between a parent and a subsidiary is different from an individual who forms and co-manages an LLC with his spouse or former spouse," but Serhant neither elaborates on this contention nor provides any case that supports its claim. Def.'s Reply MOL at 5, ECF No. 20.

Most importantly, however, Serhant points to no facts to show that the core requirements of agency are met, that is, that Homi consented to act on Team's behalf and subject to his control. See Restatement (Second) of Agency § 1 (1958). Without more, there is no basis to conclude that Homi is Team's agent.

### 3. Estoppel

Finally, a non-signatory may be bound to arbitrate by principles of estoppel when it "knowingly exploit[s]" or "accept[s] the benefits of" an agreement containing an arbitration clause. Thomson-CSF, 64

14

F.4th at 778; Deloitte Noraudit A/S v. Deloitte Haskins & Sells, U.S., 9 F.3d 1060, 1064 (2d Cir. 1993). The benefit to the non-signatory must "flow[] directly from the agreement." MAG Portfolio Consultant, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 61 (2d Cir. 2001). A benefit is indirect when "the nonsignatory exploits the contractual relation of the parties to [the] agreement" rather than the agreement itself. Id. "Put another way, 'benefits are direct when specifically contemplated by the relevant parties; and benefits are indirect when the parties to the agreement . . . would not have originally contemplated the non-signatory's eventual benefit.'" WTA Tour, Inc. v. Super Slam Ltd., 339 F. Supp. 3d 390, 400 (S.D.N.Y. 2018) (quoting Life Techs. Corp. v. AB Sciex Pte. Ltd., 803 F. Supp. 2d 270, 276 (S.D.N.Y. 2011)).

Serhant argues that Homi has directly benefitted from Team's consulting agreement with it "by suing as a third-party beneficiary of that agreement." Def.'s MOL at 17. This is so, Serhant argues, because Homi is suing to enforce ownership rights in intellectual property that are the subject of the consulting agreement that contains the arbitration clause. In support, Serhant points to the portion of the consulting agreement governing intellectual property rights, which permitted Team to identify any works "existing prior to [Team's] engagement with [Serhant]" not assigned by the agreement to Serhant. See NDA § III. Serhant seems to be arguing that because Homi seeks to enforce its claimed ownership rights in just such a work, it is

necessarily seeking to "derive the benefits" of that provision of the agreement. Def.'s MOL at 18.

There are several problems with this contention. First, Serhant's arguments on this score are conclusory and do not even make clear if this is the argument Serhant means to be advancing. Second, even if this is Serhant's argument, it does not follow that Homi seeks through this action "to derive the benefits of [Team's] consulting agreement." Id. Homi seeks to enforce its intellectual property rights in the "Engine," rights that exist independently of the contract in question.

At most, Serhant's contention is that the contractor agreement is relevant to the Court's resolution of Homi's claims. As noted above, the Court agrees and, for that reason, grants the motion to stay. But the standard for compelling Homi to arbitration is a different one. Serhant has not identified any benefit to Homi that "flows directly" from the NDA and therefore has not shown that Homi may be bound to arbitrate based on the arbitration agreement it contains. MAG Portfolio Consultant, 268 F.3d at 61.

### 4. Discovery

Finally, Serhant seeks discovery related to its alter ego and estoppel claims. A court may afford parties the opportunity to take discovery solely for the purpose of deciding a motion to compel arbitration, but courts do not grant such requests "as a matter of course." Flores v. Nat'l Football League, No. 22-cv-0871, 2022 WL 3098388, at *1 (S.D.N.Y. Aug. 4, 2022). The Court declines to do so here. Serhant is not entitled to discovery and its limited arguments

16

for non-party enforcement give the Court no non-speculative reason to believe that discovery will support its claims.

## III.    Conclusion

For the reasons set forth above, the Court hereby stays the action pending the resolution of the arbitration between Team and Serhant regarding the ownership of S.MPLE and its underlying code. Plaintiff may move to vacate the stay if, at any point, defendant undertakes to "hamper the progress of the arbitration proceeding," or if the arbitration has not been concluded within a "stated and limited period of time," which the Court will set with further input from the parties. Nederlandse, 339 F.2d at 442. Accordingly, the parties are directed to jointly call Chambers by no later than May 5, 2026, to present their positions on when the pending arbitration can reasonably be expected to conclude.

The motion to compel arbitration is denied. The motion to dismiss is denied without prejudice.

The Clerk of Court is respectfully directed to close the motion at ECF No. 16 and to stay the action.

SO ORDERED.

New York, NY
April 29, 2026

_____
JED S. RAKOFF, U.S.D.J.